this morning. I apologize, but I really very much appreciate you all's cooperation with our IT people in the clerk's office last week and this week. And hopefully we'll move forward without any glitches this morning. Ms. Napoli. Hello. Thank you for being here today and entertaining this argument during this difficult time. I know it's not easy for everyone. But may it please the court, I am Marie Napoli on behalf of the plaintiff's appellant, Jane Doe, that during her sophomore and junior years at the High School of Edgewood Independent School District was repeatedly raped by her teacher, Mr. Rivela, and school officer, Mr. Hernandez. She became pregnant due to this and has severe emotional distress, a child she needs to raise, hypersexuality as a result. The actions that are brought here are under Title IX and 1983. The district court below relied heavily on Rosa H., Fifth Circuit Court of Appeals case, which was also adopted by the U.S. Supreme Court in Gebzer v. Lago Vista Independent School. The Rosa H. Court found that the Federal Department of Education Office of Civil Rights recently issued guidelines conflicting with their analysis of tort liability under Title IX. The guidelines advocated of the adoption of a Title VII principle in cases such as this one, where a school would be liable for sexual harassment of its students by its employees if the school had notice of the harassment, knew or should have known of the harassment, but failed to take immediate and appropriate to remediate it. Gebzer similarly recognized that these policy guidelines issued by the Department of Education would hold the school district liable in damages under Title IX, where a teacher is aided in carrying out the sexual harassment of students by his or her position of authority with the institution, irrespective of whether the school district officials had any knowledge of the harassment. In general, the Rosa H. Court held when interpreting Title IX, we accord the Office of Civil Rights interpretations appreciable deference, but we cannot apply these guidelines retroactively. As we have explained, recipients of Title IX funds are bound by their agreement with the federal government. The government can add strings to the Title IX funds as they disperse them, but they cannot modify past agreements with recipients by unilaterally issuing guidelines through the Department of Education. As far as this case is concerned, the proposed guidelines do not apply. We make no comment on how these guidelines might affect cases in which a school district accepts Title IX funds after the guideline promulgation date, which was in 1996. The sexual harassment in Gebzer, the Supreme Court case, occurred from 1991 to 1993, and as such, it also predates the guidelines. In neither case was it possible to modify the past agreements between the federal government and those school districts for acceptance of federal funds. However, in our case, Edgewood Independent School District Title IX funds and continued to accept federal funds long after the enactment of 1996 guidelines, which added strings with regard to the school district's liability based on their acceptance of Title IX federal funds. As such, the standards for liability found in Rosa H. and Gebzer should not apply, but rather the civil rights guidelines which apply Title VII analysis, giving our most vulnerable citizens, our children, the same minimal protections against sexual predators in our school. This is especially true as we are fully aware that sexual predators seek out positions of employment where they can be in close proximity to children. We know that sexual predators are in our schools, and unless we are vigilant, our children will be abused. The actual knowledge and deliberate and different standard of Gebzer and Rosa H., although satisfied here, has encouraged exactly what the defense and Gebzer recognized, school officials sticking their heads in the sand, allowing continued abuse of our most vulnerable citizens, our students, to avoid liability. The Office of Civil Rights Guidelines states, the purpose of the guidance is to inform educational institutions that to receive federal financing assistance regarding the standards that the OCR follows, and that the institution should follow when investigating allegations of Title IX, have been violated because of sexual harassment of a student by an employee, consistent with the Supreme Court's decision in Franklin holding that a student may sue district court for damages based on sexual harassment by a teacher. OCR has applied Title IX to prohibit sexual harassment of students by school employees. The standard in the guidance reflects OCR's long-standing nationwide practice and reflect well-established legal principles developed under Title VII of the Civil Rights Act of 1964, which prohibits gender discrimination employment. It goes on to describe Title VII's use to protect employees in the workplace from hostile work environment, quid pro quo harassment, using agency principles for the misuse of authority, and the failure to act to remediate sexual harassment when they knew or should have known. Gebzer similarly holds that Title IX was modeled after Title VI of the Civil Rights Act of 1964, which prohibited race discrimination and programs receiving federal funds. Both statutes condition federal funds on the recipient's promise not to discriminate in what amounts essentially to a contract between the government and the recipient. Title IX's contractual nature has implications for the construction of the scope of the available remedies. When Congress conditions the award of federal funds under its spending power, the court closely examines the priority of private actions holding recipients liable in damages for violating those conditions. Our central concern in this regard is with ensuring that the receiving entity of the federal funds has noticed that it will be Franklin Gebzer and Rosa H., it is clear the strings attached by the federal government through the OCR guidelines in 1996, well prior to the federal funding accepted by Edgewood and the sexual harassment here in 2013 and 2014. Under Title VII standard, Edgewood School District would be liable for abuse of power, both by Rivera and Officer Hernandez. It would also be liable for what they should have known early on and their failure to take immediate remedial action. Courts can entertain the argument not previously brought because it was implicitly raised in the brief below with regard to the standard used for liability under Title IX described in Franklin Gebzer and Rosa H. Even if it was not impliedly raised, the court can entertain the argument in their discretion and interest of justice. Even if the guidelines did not apply, and they should, the school districts are responsible in damages for sexual harassment of Jane Doe under Title IX in 1983 as described under Rosa H. and Gebzer, which held without notice the guidelines as a condition before the funds are received, a plaintiff must prove the discrimination was intentional on behalf of the district to be awarded damages for the school's breach of agreement with the federal government. A district can only act by its employees. The cases have held that damaged remedies will not lie under Title IX unless an minimum had the authority to act and address the alleged discrimination and to institute corrective measures on the recipient's behalf and had actual knowledge of the discrimination in the recipient's program and responds with deliberate indifference, which makes it intentional. Merely being able to report discrimination to another hire up in the chain is not enough to be an appropriate person to receive the information. They must have the authority to stop it. Officer Hernandez should be held as an appropriate person under Title IX for Rivera's abuse because he was invested by the school board with the duty to supervise Rivera and the power to take action that would have ended the abuse, and he failed to do so. The articles of formation of the EISD police department specifically invest the board's authority to EISD peace officers to do the following on the district's behalf, protect and serve the Constitution and the laws of the United States, enforce the rules and regulations promulgated by the board of trustees. EISD officers are vested with the powers, privileges, and immunities of peace officers. They should not become involved in matters concerning minor student discipline whenever possible. Arrest without a warrant a person who committed a felony. Rosa H. states, we do not wish to restrict the applicability of our analysis by keying liability to certain job titles within the school system. Different school districts may assign different duties to these positions or even reject traditional hierarchy structures altogether. We hold that the school district can be liable for teacher-student sexual harassment under Title IX only if the school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee and the power to take action that would end such abuse and fail to do so. This inquiry circumscribes those school employees in the chain of command whom the school board had appointed to monitor the conduct of other employees and as such distinguish from reporting to others. Remedy the wrongdoing themselves. At the same time, it locates the acts of the subordinates to the board at a point where the liability and practical control are sufficiently close to reflect its intentional discrimination. It does so by omitting the bulk of employees such as fellow teachers, coaches, and janitors unless the district has assigned them both the duty to supervise the employee who had abuse. He had the duty bestowed upon him by the board to act on their behalf to stop exactly this behavior. He was an appropriate person. When a school board confers on a school official the power to take such personal action, it makes a deliberate, considered judgment about what sort leadership the district should have. It decides who acts for the board. Officer Hernandez himself noted during his initial interrogation in March of 2014 that EISD officers are taught that they act on behalf of the board of trustees. Similarly, principal Rodriguez states for the following in his deposition, and we ask the school district to admit that police department official had the authority and or a mandate to end the instances of sexual abuse between teacher and student should he have become aware of it. I believe earlier you told, you agreed with me that, in fact, absolutely he had the authority to end the sexual abuse if he observed it on the job, answer yes. Here, the board has made a deliberate decision for officer Hernandez to have the official power to act on behalf of the board to end such discrimination abuse if he became aware of it. Salazar does not apply here. That case was with regard to a principal that was an abuser. The board cannot have noticed through the abuser for his own abuse. Here, the school has noticed a rebellious abuse against our client because officer Hernandez became actually aware of it and responded with deliberate indifference. The Ross and Joyce and other cases relied on by the defendants in the lower court are distinguishable as they refer to peer-on-peer harassment on a college level outside the Fifth Circuit and did not involve police officers endowed by the school district to act on their behalf to enforce school policy and end harassment themselves. In Ross and the other cases, they were also different from, I'm sorry, in Ross, the other cases, they were also directed to report the harassment to others. Our case is different from those cases because Hernandez was endowed to arrest and stop the harassment on behalf of the school. An outside police officer may be able to stop the harassment by arresting him, but an outside police officer wasn't granted that authority to do it on behalf of the school. Hernandez was. Both the Supreme Court and the Fifth Circuit have declined to appropriate persons for purposes of Title VII. The ultimate question, who is an appropriate person, is necessary a fact-based inquiry because the varying roles of education officials change. Officer Hernandez' role is distinguished from fellow teachers, coaches, and janitors in that officer Hernandez was not simply a peer of rebellious with a mere duty to report. Officer Hernandez' role at EISD was more akin to institutional and or criminal oversight. Any statement to the contrary only raises issues of fact that would preclude summary judgment. Viability under Title IX may also arise from reports of the sexual harassment or sexual assault of persons other than the plaintiff. EISD knew of Officer Hernandez' arrest of official oppression, a red flag by their own expert for sexual abuse. Under Title IX, analysts and analysis acted with deliberate indifference to it as they conducted no investigation and hired him. Contrary to the court's holding below, the board itself hired Mr. Hernandez as testified to by Monica Lopez. She was the head of human resources. Similarly, Revela, a bisexual, was suspended for the safety of everyone for bringing home homosexual male students, put the school on notice that Revela was a sexual predator. Any evidence or memory of a detail of how that investigation was conducted or concluded has disappeared. Other than a written statement by a boy that was most likely generated by the school principal to put the matter to bed, reinstated Revela to continue his abuse of school. It was the reinstatement with a deliberate indifference to the school's actual notice and the high likelihood that Revela was a sexual predator. Reinstating him without conclusive findings or adequate investigation was deliberate indifference. As for the 1983 claim, the right to be free of state occasion damage to a person's bodily integrity is protected by the amendment. I will take two minutes of my rebuttal time. Okay. Okay. The right to be free of state occasion damage, so this is a 1983 claim to be free of bodily integrity and guarantees of due process under the 14th amendment. Two claims, there are two claims here. The hiring policy enacted by the As such, Monica Lopez, the head of human resources, followed those directives and did not investigate with regard to his official oppression arrest. If the school had different policies that required such an investigation into arrest of sexual abuse of a minor, she would have known he was found guilty by the board of police officers and fired even though he was not convicted. He would not have been fired. The school's policy only required investigation into convictions, of which there were none. The policy that only required investigation into convictions rather than arrest was the driving force behind the inadequate screening policy and improper hiring by the board, which Monica Lopez testified all hires were done by the board themselves upon recommendations of her and the superintendent. Here, we satisfy the requirement that the policymaker have a policy that was a moving force and infringement of my client's constitutional rights. It is the obvious consequences that a sexual predator who would seek employment in the schools would be hired and sexually abused when the school's policy only requires an investigation of convictions but not a sexual assault arrest. Ms. Lopez followed the guidelines and policies in her hiring with Mr. Hernandez set out by the board, which caused her to recommend the hiring to the board who ultimately hired him. I will leave the rest to Roberto. Thank you, Mr. Wood. Mr. Wood, I can't hear you. Kim's going to have to unmute him. Call in user six, Kim. Can you all hear me now? Yes, we can hear you now. Okay. I'm not sure if I'm coming through the phone or through the microphone, so I'm just keep the phone here. I apologize for any distraction that creates. First of all, I want to thank the panel for the opportunity to be here and present argument on behalf of the Edgewood Independent School District. As the panel is aware, this court has had the opportunity in many instances to look at situations that are very egregious and that none of us would wish to see but in the context of a Title IX case, the court has been quite diligent in making sure that the funding recipient is not punished unless there are instances of intentional discrimination. Title IX, of course, is a spending clause legislation. The private right of action under Title IX is an implied one from the judiciary, and the judiciary has been cautious about how it applies it not to create law above and beyond what Title IX would necessarily imply. This is an unfortunate set of circumstances, but if the court looks at this case and looks at the precedent that is cited in our brief, the numerous cases dealing with Title IX violations that have been heard by the Fifth Circuit, you will recognize that there are not instances where the funding recipient has been intentionally discriminatory with respect to its handling of anything. The first thing to take note of with respect to this issue is that there is no question that if this situation had involved only Officer Hernandez, we could look purely at the decision that Judge Olin authored in the Salazar case, which echoes the reasoning in the Gebster case, indicating that when we perform the Title IX analysis, we do not look to the knowledge of the wrongdoer. Clearly, we would not have expected Principal Alcocer in the Salazar case to report his own wrongdoing. Likewise, we would not have expected for Officer Hernandez to report his own wrongdoing in this particular situation. The court is aware and the record reflects that Officer Hernandez had begun abusing Jane Doe prior to the situation involving Mr. Rabia's misconduct himself. The court has been careful to analyze, particularly in the Rosa H case, what exactly constitutes an appropriate person under Title IX for purposes of reporting. The court has been diligent in making sure that it does not punish federally funded school districts for negligence, but only is for the intentional decision to refuse to cease the discrimination before a private right of action would be successful under Title IX. There's no question that Officer Hernandez was not an appropriate person. In essence, the sole argument that plaintiff makes with respect to Officer Hernandez being an appropriate person is that he had the authority to, quote, they use the word supervise. I would suggest that the application of the word supervise is inappropriate in this instance, because Officer Hernandez had no authority whatsoever other than to report Mr. Rabia's conduct to law enforcement agencies. The court has recognized in the cases cited in our brief that mere reporting is not sufficient under Title IX to protect the entity from liability. And in analyzing the case, and Rosa H does a fine job of setting that out, it suggests that the person who could constitute an appropriate person is a person who has the authority to end the abuse on behalf of the school district. And it makes reference to such factors as does the person have the authority to hire, to fire, to conduct evaluations. Clearly, if one were to look at the chain of command in this particular instance, Officer Hernandez had no employment authority over Mr. Rabia whatsoever. That authority belonged to the principal, Principal Rodriguez. Only Principal Rodriguez could have recommended that Mr. Officer Hernandez or Mr. Rabia be terminated. Only he could conduct evaluations of Mr. Rabia and reprimand him with any kind of misconduct or inappropriate behavior that he might have observed. There is really no difference between Officer Hernandez in this situation and any other employee within the district. The court has recognized in the cases cited in our brief that not only does Officer Hernandez have the duty and responsibility to make a report when he observes this type of behavior, but every other school district employee practically that would observe the same behavior is similarly required to do so under the Texas Family Code. The Texas Family Code would require teachers, it would require coaches, instructional aides likewise to make reports of the same conduct. So Officer Hernandez is really situated no other people. If we change the analysis under Title IX to making a funding recipient responsible anytime that a person who has a responsibility to make a report fails to do so, we greatly expand and frankly, practically create strict liability with respect to issues of Title IX. The court has previously recognized that the vast majority of employees of the school district will be excluded from appropriate persons with respect to Title IX reporting. And accordingly, we believe that the court should uphold the decision of the district court indicating that Officer Hernandez was not an appropriate person under Title IX for reporting purposes. I would refer the court to the record on appeal at 1756. Therein lies the discussion, the district court's discussion of why Officer Hernandez is not an appropriate person. The court cites therein to Rosa H and I believe that the court got that correct. The next thing I'd like to address is the issue of Officer Hernandez 1983 arrest. The plaintiff has only for the first time on appeal indicated that that 1983 arrest should serve as a basis for Title IX liability. That argument is clearly waived. It is very obvious within plaintiff's pleading that the hiring of Officer Hernandez related solely to their claim under 1983. In that instance, I would refer the court to plaintiff's active pleading, which is found at the record on appeal 377 to 410. If you look within that pleading, you can see that plaintiff sets forth her Title IX claim between 386 and 391 of the record on appeal. The 1983 claim in which he addresses the hiring of Officer Hernandez is contained within ROA 396 to 406. So this argument has not been raised before the court and has been waived. Nonetheless, I would like to address the arrest. First of all, the court's aware that this was an approximately 30-year-old arrest that would have been reflected by the criminal background check that was conducted by Edgewood Independent School District. The plaintiff has suggested to you that there was basically a lackadaisical screening of the candidates for application, but the stringent requirements of that application are set forth in our brief, including the fact that Officer Hernandez was required to submit his fingerprints and also consent to a criminal background check. The criminal background check would have reflected an arrest for a Class A misdemeanor charge of official oppression. Now, this is important because if you look at Texas Penal Code 3903, the conduct clearly would have been described as a Class A misdemeanor. Again, with a 30-year-old arrest, not likely to raise the suspicions or require much further entry with respect to that particular entry. But the record reflects at this point that, unlike what is quoted in Plaintiff's brief, the plaintiff indicates that Officer Hernandez had been convicted of rape. That is far from the truth. What the record actually reflects is that he was acquitted of the charge of official oppression. That acquittal can be found in the record on appeal between ROA 3776 and 3780. The record makes clear that he was never even charged with the charge of the accusal of whether or not he assaulted JT by touching her breast with his lips. That is the conduct of which he was accused approximately 30 years before this. And again, the record reflects that this would have constituted sexual contact with a child younger than 17, and Officer Hernandez was acquitted of that conduct. It hardly flows that a 30-year-old arrest resulting in an acquittal by a full jury charge would lead the person doing the screening for Edgewood Independent School District to conclude that this person, Officer Hernandez, constitutes a clear and that Officer Hernandez had served as a police officer with a number of police forces, including the San Antonio Police Department, following his initial arrest for that charge, and apparently had a long career. When his immediate supervisor, past supervisor from Incarnate Word, was interviewed about his performance, he gave him glowing reviews, talked about his wealth of knowledge and his experience, and made no reference to any type of problems. The problems that are subsequently addressed by plaintiff or raised by plaintiff with respect to alleged sexual harassment of a co-worker, etc., are things that were completely, obviously, unaware or unavailable to the school district at the time that they hired Officer Hernandez, and are simply an attempt to divert the court from what the Edgewood Independent School District knew at the time that they made the hiring decision. Finally, I'd like to address the issue with respect to the investigation that was conducted. Again, this investigation seems to be an attempt to detract from and reveal the teacher, this being the investigation that occurred in 2014. For the first time in the brief, plaintiff makes the suggestion that the student who was found in Mr. Revia's home was a homosexual student. I would refer the court that there is no record, no appearance in the record, to suggest that this student was, in fact, homosexual. I'm not aware of any suggestion in the record to indicate that Mr. Revia was bisexual, either. I would challenge counsel to point to any indication, but I've looked at the record clearly. That was the first time I heard that this morning, but I've looked at the record clearly and no indication that this student was homosexual. That is an interesting argument under Title IX, because there's the suggestion that Mr. Revia might have engaged in inappropriate behavior towards a homosexual male student and also engaged in misbehavior towards the female student in this situation, which presumably could raise claims under Section 1983, but would not necessarily raise claims under Title IX. In other words, he's an equal opportunity discriminator. But what I would suggest to you is that if you look at that investigation, you realize that there was absolutely nothing indicative in the 2014 investigation with respect to this male student. On Monday, January 13, 2014, Mr. Revia was placed on leave so that they could conduct an investigation. He was directed to stay away from school property and not to communicate with any personnel about the investigation, except for responding to instructions from the Human Resource Department. This, of course, is standard procedure in investigating these types of things. The Director of Human Resources and Legal Services Investigation revealed that Mr. Revia had allowed a student at his residence, and he secured a witness statement from the male student in question. I'll refer the Court to Record on Appeal 3695. The male student provided a statement indicating—he provided a statement on January 16 indicating that he had been present at Revia's house to work on a homecoming project for which Mr. Revia was the class sponsor. His mom had picked him up from Mr. Revia's office—or Mr. Revia's house, and Mr. Revia's girlfriend had been present the whole time. The Director of Legal Services likewise interviewed Mr. Revia, and the contemporaneous notes from his investigation are found within the Record on Appeal at 3696. Mr. Revia's explanation was that his ex-girlfriend, Rosa Voskic, had suffered from bipolar disorder, had threatened to hurt him to the point that he had previously had to file a report against her. He provided her with emails that he received from her, which supported his testimony. He testified that Rosa Voskic is the person who was present when the student came to his house and is also the person who made the allegation of having a student against his house against him. After this investigation, after Mr. Walheim had received statements from the witness—I mean from the student and from Mr. Revia—and there was an indication, you'll see in the statement, that nothing inappropriate had occurred, he was returned to duty. Accordingly, what the court must conclude is that there was no actual knowledge of sexual abuse in this situation with Mr. Revia either. The only actual knowledge that occurred was after anonymous tip was made to Principal Rodriguez. Principal Rodriguez began an investigation of the underlying events. The record is clear that Jane Doe was untruthful with Principal Rodriguez. It's also clear that she was untruthful with the Texas Rangers and with the FBI with respect to the conduct that occurred. However, in questioning Mr. Revia, Mr. Revia immediately confessed, was immediately suspended. Later that day, his resignation from the school district was reported to the State Board for Educator Certification. He likewise notified Mr. Walheim of the involvement of Officer Hernandez, who was immediately likewise suspended, also referred, and both of them, of course, were incarcerated on the basis of this. We ask the court to look at the sustaining precedent in the cases that have been cited. The courts have the opportunity again to look at a number of claims of sexual harassment. We ask that you concur and affirm the district court in concluding that Mr. Officer Hernandez was not an appropriate person to impute Title IX liability, that the district court properly determined that she failed to establish a tribal fact with respect to whether or not the district was deliberately indifferent after receiving actual notice, and that she failed to establish a genuine issue of tribal fact with respect to municipal liability under Section 1983. Since the district's screening policy that was set forth in our briefing was constitutional, it was not a moving force behind his misconduct, and the governmental entity cannot be held vicariously liable for discretionary acts of non-policy employees. I thank you for your time. Thank you, Mr. Wood. Ms. Napoli, rebuttal? Title IX has been interpreted as a contract between the government and the receiving district, and based on that, since it's silent as to damages, if they breach their agreement to not discriminate, the court has imposed liability only if they find the discrimination intentional. However, that changes if there have been clear strings attached to that contract to apply, not this other finding. Those cases that found that you had to have actual knowledge and deliberate indifference was before the agreement and acceptance of funds was before the enactment of those regulations. Did you make this argument in the district court? I did not make this argument in the district court, but the district court, implicitly, it was there because implicitly relied heavily on Rosa H. and Gerbser, which talk about liability and specifically this case, that it's a contract, so they have to find intentional acts. But our case is different, so you can entertain the argument based on that. You can also entertain the argument on the interest of justice in your discretion. Some of the other points that I have is just not true. It's just not true that this police officer, Mr. Hernandez, was not an appropriate person, although they talk about some signs that would show an appropriate person the ability to hire a fire, that's not the law what decides what's an appropriate person. If they had, at a minimum, had the power to stop the harassment, that they were given the power from the board to stop the harassment, and that's exactly what Mr. Hernandez had. Hernandez had the authority and or mandate to end instances of sexual abuse between the teacher and the student. Mr. Hernandez himself said he was taught that he was acting on behalf of the board, and when they enacted the police department specifically invested the board's authority to the police officers, to vested them with the powers and privileges and immunities of the police department. Ms. Apley, your time has expired. We have your argument. Okay, thank you. Thank you both for participating. We appreciate it, and we apologize. This is not technically as smooth as we would have liked, but thank you very much. We did hear your argument. We got it all. Okay, thank you very much. Thank you.